## Norfolk
## DONNIE ELIJAH SMALLWOOD
### v.
## COMMONWEALTH OF VIRGINIA
No. 1229-91-1
Decided May 26, 1992

528

COUNSEL

David B. Olson, for appellant.

Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Donnie Elijah Smallwood appeals his convictions for robbery and the use of a firearm in the commission of that robbery. He contends the trial judge erred (1) in allowing the trial to proceed without the affirmative waivers of a jury trial by the Commonwealth's attorney and trial judge, and (2) in finding the evidence sufficient to support the conviction. For the reasons that follow, we reverse the convictions.

## I.

Prior to trial, Smallwood's counsel filed a motion to suppress the identification testimony. The motion asserted that the witnesses were shown an impermissibly suggestive photographic

spread from which Smallwood's photograph was selected. The trial judge held "in abeyance" his ruling on the motion until the conclusion of the evidence. The evidence at trial proved that at 1:50 a.m., December 22, 1990, a man wearing a black ski mask and carrying a gun robbed a McDonald's restaurant. The robber ordered Charles Hill, Tiffany Craig and two other employees of the restaurant to sit on the floor and forced the manager, Laura Ford, into the office to open the safe. The robber obtained $3000, disabled the telephone, and exited the restaurant. Detective W.F. Morgan testified that he showed the employees a photo spread five weeks after the robbery. Morgan said Ford identified the photograph of Smallwood. Craig and another employee could not identify any of the photographs. At trial, three employees testified Smallwood looked like the robber.

Smallwood's only witness, Nina White, testified that Smallwood stayed with her from 11:00 p.m. until morning every night during the week before Christmas 1990. However, under cross-examination, she testified that she believed, but could not specifically recall, that Smallwood stayed with her from 12:00 a.m. until the morning of December 22, 1990.

At the conclusion of the evidence, Smallwood's counsel renewed the motion to suppress the identifications and also moved to strike the testimony. In the motion to strike the testimony, Smallwood's counsel argued that the witnesses' testimony was insufficient to prove beyond a reasonable doubt that Smallwood was the perpetrator of the robbery. The trial judge dismissed the charges that Smallwood used a firearm in the abductions of Hill and Craig because he found their identifications unreliable. The trial judge found Smallwood guilty of robbery of Ford and use of a firearm in the commission of that robbery. After considering the presentence report, the trial judge sentenced Smallwood to twenty-five years in the penitentiary for robbery, suspending ten years of the sentence, and to two years in the penitentiary for use of a firearm in the commission of the robbery.

## II.

Smallwood argues that the trial judge failed to give his affirmative consent to try these felony cases without a jury and failed to elicit a similar consent from the Commonwealth. *See* Code § 19.2-257. Smallwood argues that, notwithstanding the rec-

itation in the order of conviction that both the judge and the Commonwealth concurred in his waiver, the absence of consent on the record at or prior to trial amounts to reversible error. Although Code § 19.2-257 requires that a defendant's waiver of a jury trial be accompanied by the "concurrence of the attorney for the Commonwealth and of the court entered of record," this Court has previously ruled that this issue cannot be raised for the first time on appeal. *See McCormick v. City of Virginia Beach*, 5 Va. App. 369, 371 n.1, 363 S.E.2d 124, 124 n.1 (1987). Smallwood did not object or raise this issue in the trial court. Therefore, we will not consider this issue on appeal and do not decide whether the conviction order suffices to meet the requirements of Code § 19.2-257. *See* Rule 5A:18.

## III.

Smallwood does not appeal the trial judge's failure to grant his motion to suppress the identifications. Instead, he contends that the evidence upon which he was convicted, the testimony of the witnesses identifying him as the robber, was insufficient to prove beyond a reasonable doubt that he was the robber.

In determining whether eyewitness identification is reliable, our Supreme Court has adopted the factors set out in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), which include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Townes v. Commonwealth*, 234 Va. 307, 331, 362 S.E.2d 650, 663-64 (1987), *cert. denied*, 485 U.S. 971 (1988). Smallwood claims that the application of these factors undermines the reliability of the identifications. In addition, he claims his conviction is based on nothing more than identification of his eyes and the bridge of his nose as being consistent with those of the robber, without any further corroboration or evidence tending to show he committed armed robbery. This, Smallwood contends, constitutes insufficient evidence upon which to support his conviction beyond a reasonable doubt.

Hill testified that the robber wore blue jeans, a black jacket, and a black ski mask that covered his head and face, "[e]xcept for his mouth and around his eyes." When questioned an hour after

the robbery, Hill said that he did not believe he could recognize the robber if he saw him again. A detective showed photographs to Hill for the first time immediately before the preliminary hearing in March, two months after the robbery. Hill testified that he determined that the robber could have been one of two persons whose photographs he saw. It was not until Hill saw Smallwood "sitting at the table" during the preliminary hearing that Hill determined that Smallwood was the robber. At trial, Hill testified that when he was asked at the preliminary hearing about his ability to identify Smallwood, he said that he was able to do so "[b]y the pictures . . . the detective showed [him that day]." At trial, Hill pointed to Smallwood and said he was the robber.

Craig testified that she first saw photographs of suspects the day of the preliminary hearing. She said that she picked two photographs and narrowed that choice to the one that "looked like" the robber. She pointed to Smallwood as the person whose picture she selected. However, she said she "really couldn't say for sure, because he had on a mask."

Both Hill and Craig did not see the photographic spread until the preliminary hearing held two months after the robbery. Their first face-to-face identifications also occurred at the preliminary hearing. At trial, after stating that identifications made by Hill and Craig "give the Court some problem," the trial judge found that their identifications were the product of a suggestive procedure. The trial judge then struck the charges that Smallwood used a firearm during the commission of the abductions of Hill and Craig.

Thus, Smallwood's conviction for robbery and use of the firearm during the commission of the robbery was based only upon Ford's identification. It is undisputed that the robber wore a ski mask throughout the robbery. Because of lighting conditions, Ford did not get a good look at the robber until the robber was in the office taking money out of the safe. She was the only employee in the office with the robber. Based on her recollection that the robber's "eyes are slanted and [the] bridge of his nose is larger than normal," Ford selected Smallwood's photograph from an array of photographs. She described the robber as tall with thin arms and a "regular voice." She also told police he had acne on his cheeks and a dark complexion.

At trial, however, Ford admitted that Smallwood did not have a dark complexion, and she acknowledged that Smallwood's face bore no signs of acne. In addition, Ford acknowledged that at the preliminary hearing she testified that "[t]here's a similarity just based on his nose and eyes, but just can't say for a fact its [sic] the same person, no, because I could not see his entire face when he came in with the ski mask." Her testimony at the preliminary hearing that Smallwood "resembles [the robber] a lot" was similar to her trial testimony that, "out of these pictures, [Smallwood was] the person who most looked like the person who came in." Ford's trial testimony was further qualified when she identified Smallwood "because . . . I feel . . . that is him."

■ While unequivocal evidence of identification immediately following the offense may provide sufficient corroboration to overcome difficulties arising from in-court identifications, *Martin v. Commonwealth*, 210 Va. 686, 692, 173 S.E.2d 794, 799 (1970), all of the pre-trial identifications of Smallwood were uncertain. Moreover, the length of time between the crime and Ford's photographic identification of Smallwood was approximately five weeks. Her testimony also proved that her pre-trial identification of Smallwood's photograph occurred after she was suggestively asked to select from the photographic array "the person that [she] thought [she] had seen the night of the robbery." In addition, there are significant inconsistencies between Ford's pre-trial description of Smallwood and her acknowledgement of his actual appearance at trial. There was no explanation as to why she became more positive between the preliminary hearing and the trial. This unaccounted-for change raises questions about her trial testimony. Because the robber wore a ski mask throughout the robbery and because Ford never saw more than his eyes and the bridge of his nose, the discrepancies between her descriptions of his coloring and skin condition have added significance.

■ If identification evidence is equivocal and unreliable, the totality of the other evidence may still be sufficiently probative of guilt so as to permit the trier of fact to find the accused guilty beyond a reasonable doubt. *See Burrows v. Commonwealth*, 224 Va. 317, 319, 295 S.E.2d 893, 895 (1982). However, no other evidence linked Smallwood to this crime. Although the detective discovered in Smallwood's home dark blue pants and gray pants, neither of those pants was identified by any witness as being cloth-

ing similar to that worn by the robber. Thus, because the only evidence linking Smallwood to the crime is Ford's unreliable identification, the evidence is insufficient to support the conviction. *See Lottie v. State*, 262 Ind. 124, 129, 311 N.E.2d 800, 803 (1974)(where witness testified that only the defendant's nose and eyes resembled the perpetrator's and that the defendant was shorter than she remembered the perpetrator to be, the totality of the evidence was insufficient to sustain the conviction); *State v. Chism*, 591 So. 2d 383, 386 (La. Ct. App. 1991)(where the only witness was unable to identify defendant at trial because of dissimilar hair style, skin tone, and fact that defendant had an artificial eye, the witness's prior out-of-court identification alone was insufficient to sustain conviction where no other evidence linked defendant to the crime); *State v. Stallings*, 77 N.C. App. 189, 190-91, 334 S.E.2d 485, 486 (1985), *cert. denied*, 315 N.C. 594, 341 S.E.2d 36 (1986)(where witness could unequivocally testify only to similarities between the perpetrator's and defendant's walk and blue eyes, the sum of the evidence failed to support the conviction).

█ This record contains insufficient indicia of reliability to support the identifications. No other evidence proved Smallwood was the perpetrator.

[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

* * *

[This] doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt," at a minimum, is one based upon "reason." Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. . . . [S]uch an occurrence has traditionally been deemed to require reversal of the conviction.

*Jackson v. Virginia*, 443 U.S. 307, 316-17 (1979) (footnotes omitted).

Simply put, there was insufficient evidence for the trial judge to find that the evidence proved beyond a reasonable doubt that Smallwood was the perpetrator of the robbery. Accordingly, we reverse and dismiss the indictment.

*Reversed and dismissed.*

Barrow, J., and Moon, J., concurred.