COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Cole
Argued at Richmond, Virginia


KIRK CHAMBERS, A/K/A
 KIRK LAMONT CHAMBERS
                                    MEMORANDUM OPINION* BY
v.    Record No. 0943-98-2           JUDGE MARVIN F. COLE
                                       OCTOBER 5, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
                       Richard S. Blanton, Judge

           Phyllis L. Bean for appellant.

           Jeffrey S. Shapiro, Assistant Attorney
           General (Mark L. Earley, Attorney General;
           Ruth M. McKeaney, Assistant Attorney General,
           on brief), for appellee.


     Appellant, Kirk Chambers, was convicted in a bench trial of

robbery and use of a firearm in the commission of robbery.  He

contends that the evidence is insufficient to prove him guilty of

either offense beyond a reasonable doubt.  We disagree and affirm.

     When the sufficiency of the evidence is challenged on appeal,

we view the evidence "in the light most favorable to the

Commonwealth and give it all reasonable inferences fairly

deducible therefrom."  Higginbothan v. Commonwealth, 216 Va. 349,

352, 218 S.E.2d 534, 537 (1975).  "A conviction will be affirmed

unless it appears from the evidence that it is plainly wrong or

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

without evidence to support it."  Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985) (citation omitted); Code § 8.01-680.  "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide."  Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986).

So viewed, the evidence clearly established that on June 18, 1997, someone robbed Davis Service Center (Center), a convenience store, by using and displaying a firearm in a threatening manner. The crux of appellant's claim of insufficient evidence is that the eyewitness identification of him as the robber was unreliable and the corroborating testimony of Clarence Johnson was unworthy of belief.  Appellant claims that on the night in question he was at home with his mother.

Johnson testified that on June 18, 1997, at the request of appellant, he drove appellant to the Center.  In a statement to the police investigating the robbery, Johnson said that en route to the Center appellant said that he was going there to rob it. However, at trial Johnson testified he "wasn't 100 per cent sure" what appellant had said.  Upon arriving at the Center, Johnson left the parking lot for a short period of time and returned to pick up appellant.  When he got back, he saw appellant through the window.  He had his arms on the cash register and was leaning on the counter, but Johnson could not see the person to whom appellant spoke.

-

When appellant came out of the store, he dropped what appeared to Johnson to be a single bill of money. Appellant picked it up, went back into the store, picked up something else and came straight back to the car.

Johnson testified that appellant wore dark clothing, blue jeans, some kind of dark shirt, and a hat. He testified that when appellant returned to the car, he heard a paper sound in appellant's pants. Johnson said, "I could hear a crunchy sound like paper."

Cindy Davis, who was working at the Center, testified that as she washed the front door, a man approached, displayed a gun, and ordered her back into the store. The man told Davis and Nancy Burris, who was also working, to get on the floor. The women complied. Davis opened the cash register, and the man took money from the drawer. The man left momentarily, then returned. Davis looked "right in his face." Davis picked appellant's photo from a display, and identified appellant in court as the robber. Davis had "no doubt" of her identification.

Burris testified that appellant was not the person who robbed the store. However, Burris testified that she was trying not to look at the robber and that she was paying more attention to Davis, because she feared for Davis' safety.

The victims inaccurately described appellant's complexion, height and age at the time of the robbery.

-

Although the admissibility of the identification is not challenged, the factors enunciated in Neil v. Biggers, 409 U.S. 188 (1972), are significant circumstances that may be considered, along with other evidence, in determining the sufficiency of the evidence.  The factors include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. at 199-200.  The trial court is capable of "measuring intelligently the weight of identification testimony that has some questionable feature. . . .  The defect, if there be one, goes to weight and not to substance."  Manson v. Brathwaite, 432 U.S. 98, 116-17 (1977).

Davis recounted her observation of the robber, which was more extensive than that of Burris, who consciously tried not to look at him.  Davis was certain of her identification, and her identification was supported by Johnson's testimony.

The testimony of the Commonwealth's witnesses was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of robbery and use of a firearm in its commission.

Affirmed.

-

Benton, J., dissenting.

"It is a canon of criminal law that it is not sufficient to create a suspicion or possibility of guilt, but the evidence must go further and exclude every reasonable hypothesis except that the accused is guilty of the offense charged in the indictment."  Stone v. Commonwealth, 176 Va. 570, 578, 11 S.E.2d 728, 731 (1940).

> [W]hether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law.  A conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand.
>
> It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense for which a defendant is being tried.
>
> A criminal defendant is entitled to the benefit of a reasonable doubt arising from the evidence of the Commonwealth as well as from his own evidence.

Bridgeman v. Commonwealth, 3 Va. App. 523, 528-29, 351 S.E.2d 598, 601 (1986) (citations omitted).

These well established principles govern our review of Kirk Chambers' appeal of these convictions for robbery and use of a firearm in the commission of robbery.  As in Smallwood v. Commonwealth, 14 Va. App. 527, 418 S.E.2d 567 (1992), the

-

evidence in this case created only a suspicion or possibility of Chambers' guilt. This Court held in Smallwood that similar evidence of equivocal identification and inconsistencies was insufficient to prove Smallwood's guilt beyond a reasonable doubt. Specifically, we noted the following:

> While unequivocal evidence of identification immediately following the offense may provide sufficient corroboration to overcome difficulties arising from in-court identifications, all of the pre-trial identifications of Smallwood were uncertain. Moreover, the length of time between the crime and [the witness'] identification of Smallwood was approximately five weeks. [The witness'] testimony also proved that her pre-trial identification of Smallwood's photograph occurred after she was suggestively asked to select from the photographic array "the person that [she] thought [she] had seen the night of the robbery." In addition, there are significant inconsistencies between [the witness'] pre-trial description of Smallwood and her acknowledgement of his actual appearance at trial. . . . [T]he discrepancies between her descriptions of [Smallwood's] coloring and skin condition have added significance.

14 Va. App. at 532, 418 S.E.2d at 569-70 (citation omitted).

As the majority correctly notes, immediately after the robbery, both Nancy Burris and Cindy Davis gave the responding police officer a physical description of the robber that was inconsistent with the physical description of Chambers. On the night of the robbery, both Burris and Davis identified the robber as a light-skinned black male, age 30-32, who was 5 feet 7 inches tall, and wearing baggy pants. Both also recalled that

-

the robber had short hair on his head and no facial hair.  The
evidence, however, established that Chambers is six feet tall
and twenty-four years of age.  Further, Chambers had long hair
on the day of the robbery and has had a mustache all his adult
life.

During the incident, the robber "was right there in
[Burris'] face" and three times ordered Burris to the floor
before she responded.  Burris testified that she clearly saw the
robber and that the description she gave the police the night of
the robbery was accurate.  Indeed, Burris testified that
Chambers "does not look like the robber."  She elaborated on her
testimony as follows:

> [JUDGE:]  To make sure I'm clear:  How do
> you see the defendant in the courtroom?  Not
> putting words in your mouth, but you feel
> like you got a good, substantial look at the
> robber?
>
> [BURRIS:]  Yes, sir, I did.
>
> [JUDGE:]  You are saying to the Court that
> you are convinced that that is not the
> person.
>
> [BURRIS:]  I'm pretty well convinced, yes,
> sir, because I know what I saw that night
> and reported that night.  It is--
>
> [JUDGE:]  That is not the man?
>
> [BURRIS:]  In my opinion, yes, sir.  In my
> opinion.

Although the robber wore a "railroad" cap, no evidence
linked such a cap to Chambers.  Moreover, the shoe print found

-

at the scene of the crime was never connected to Chambers. The evidence also proved that the police found a fingerprint on the cash register, which had been jerked open by the robber. However, the fingerprints found on the cash register and the exterior glass door did not match Chambers' fingerprints.

Four months after the robbery, Davis, the other store clerk, identified Chambers' photograph under questionable circumstances. Davis selected Chambers' photograph from an array of photographs only after she was told that the suspect's photograph was in the array. Moreover, Davis' trial testimony concerning the robber was so inconsistent with her pretrial statements as to create uncertainty about her identification of Chambers as the robber. Although on the night of the robbery Davis reported that the robber was wearing baggy pants, at trial and at the preliminary hearing, Davis was adamant that the robber's pants were "definitely not baggy." On the night of the robbery, Davis also reported the robber as being light-skinned. Yet, at the preliminary hearing, she stated that Chambers had "medium" skin. Finally, at trial, Davis described Chambers as "between light and dark," then stated his complexion was "medium." When confronted about this discrepancy, she stated, "Well, I was upset [on the night of the robbery.]"

When identification evidence is equivocal and unreliable, we must look to the totality of the other evidence to determine whether the trier of fact could have found Chambers guilty

-

beyond a reasonable doubt.  See Burrows v. Commonwealth, 224 Va. 317, 319, 295 S.E.2d 893, 895 (1982) (holding that an equivocal identification and other suspicious circumstances were insufficient to sustain a robbery conviction).  Through Clarence Johnson, however, the Commonwealth only created additional suspicion through conjecture.  The police initially suspected that Johnson, a four-time convicted felon who is thirty-four years of age, was the robber.  Although Johnson had been a paid police informant since July 1997, a month following the robbery, Johnson did not insinuate that Chambers was involved until October 1997, nearly four months after the robbery.  Johnson made this disclosure only after the police focused their investigation on Johnson and began to question him as a suspect in the robbery.

At trial, Johnson testified that on the day of the robbery, while Johnson was "getting high" on cocaine, Chambers asked him for a ride to the store.  He testified that he drove Chambers to the store and then drove to a nearby "wayside" to "use the bathroom" while Chambers was in the store.  When he returned to the store, he saw Chambers leaning on the counter.  Johnson could not recall whether Chambers was wearing a hat, and he never saw Chambers with a gun.  He only claimed to "hear a crunchy sound like paper" coming from Chambers' pocket when Chambers left the store and entered the vehicle.  Significantly,

-

he did not testify that he saw Chambers rob the clerks or that Chambers admitted robbing the clerks.

On an important issue, Johnson's testimony contradicts the testimony of Davis. Davis testified that while the robber was walking away, but was still behind the customer counter, the robber dropped money and returned to retrieve it. She testified that the robber never re-entered the store after he took the money and left the store. Johnson testified that he saw Chambers leave the store, re-enter the store to retrieve something, and then leave the store again. That discrepancy is significant because the record also reveals that the dispatcher erroneously reported on the night of the robbery that the robber left the store and then re-entered the store. Johnson's testimony, which is consistent with the dispatcher's erroneous report, raises significant doubt as to the veracity of his testimony and basis of his personal knowledge.

The evidence in this case consists solely of the unreliable identification of only one of the victims of the crime, the questionable testimony of a convicted felon, who himself was a suspect in the crime until he implicated Chambers, and the testimony of Burris, that Chambers was not the perpetrator. In its totality, the evidence was insufficient to move the Commonwealth's proof beyond the realm of speculation, suspicion, and innuendo. "[E]ven probability of guilt is not sufficient

-

[to support a conviction]."  Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971).

For these reasons, I believe this evidence raises reasonable doubt whether Chambers was the robber.  I would reverse the convictions and dismiss the indictments.