COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


KENNETH F. WINSTON
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2886-01-1           JUDGE ROBERT P. FRANK
                                        JULY 30, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                      Walter J. Ford, Judge

            Charles E. Haden for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Kenneth F. Winston (appellant) was convicted in a bench trial

of two counts of robbery, in violation of Code § 18.2-58, and two

counts of use of a firearm in the commission of a robbery, in

violation of Code § 18.2-53.1.  On appeal, he contends the trial

court erred in denying his motion to strike because the evidence

was not sufficient to convict.  Finding no error, we affirm the

convictions.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

ANALYSIS

Appellant contends the victims' identifications of him as the robber were unreliable, citing the criteria in Neil v. Biggers, 409 U.S. 188 (1972), and, therefore, were insufficient as a matter of law to convict him. Although appellant does not challenge the admissibility of the identifications,[1] the factors enunciated in Biggers may be considered, along with other evidence, in determining the sufficiency of identification evidence. See Smallwood v. Commonwealth, 14 Va. App. 527, 530, 418 S.E.2d 567, 568 (1992). These factors include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199-200.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). When the sufficiency of the evidence is challenged on appeal, we "look to that evidence which tends to

_____

[1] Appellant does not contend the identification procedures were unduly suggestive or that the process was improper.

-

support the verdict and . . . permit the verdict to stand unless plainly wrong."  Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless . . . plainly wrong or without evidence to support it."  Martin, 4 Va. App. at 443, 358 S.E.2d at 418.  The "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the factfinder's determination."  Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993).

"[W]hether an identification is reliable 'depends on the totality of the circumstances.'"  Satcher v. Commonwealth, 244 Va. 220, 250, 421 S.E.2d 821, 839 (1992) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)).  A witness' degree of attention and ability to observe weigh heavily in determining the reliability of the identification.  Here, each victim had the opportunity to view the robber.  Both victims were robbed during daylight hours.  The victims stood close enough to the perpetrator to hand him their wallets.

The robbery of Edwin Kilgore took "less than half a minute."  The robber wore a stocking cap, and his face was exposed.  Shortly after the robbery, Kilgore described his assailant as an African-American, between 180 and 190 pounds, "probably six foot [sic]" tall, wearing dark clothes.  When

-

asked at trial, "How can you be certain that the person who robbed you is [appellant]," Kilgore responded, "[W]ell, I will never forget that face, I don't think.  It is a lasting impression."

Ashton Brown, the second victim, saw appellant before the commission of the crime, noticing a "tall, large person" on a small bicycle riding past his house twice.  At that time, appellant was wearing a cap.  Brown testified that, although the perpetrator wore a ski mask when he committed the robbery, his eyes and nose were exposed.  The robber was on the same bicycle that appellant rode just minutes earlier.  This robbery lasted "less than five minutes."

Brown described his assailant shortly after the incident, saying he was dressed in a "heavy, bulky jacket" and weighed 220 to 230 pounds.  When confronted with appellant's assertion that he weighed much less, Brown explained the robber wore a "bulky outfit.  I thought he was filling that out, but evidently, he wasn't."  At trial, appellant testified he weighed 170 pounds.

We cannot say, as a matter of law, that the victims' testimony was inherently incredible merely because they were mistaken about appellant's precise height and weight.  The differences between the victims' descriptions and the actual appearance of appellant go to the weight of the evidence.  See Satcher, 244 Va. at 249, 421 S.E.2d at 838-39.  The trial judge was capable of "measur[ing] intelligently the weight of

-

identification testimony that ha[d] some questionable feature."
Manson v. Brathwaite, 432 U.S. 98, 116 (1977).

Each victim demonstrated a high level of certainty in identifying appellant from the photo spread and in court. Kilgore, approximately a week after the robbery, was shown a photo spread. He identified appellant within two or three minutes. Brown, who viewed the photo spread two or three days after the robbery, "cut a piece of paper that would only show his -- not the man's whole head but just [his eyes and nose]. And from that, I picked this individual out."

Appellant argues, since Brown testified he was not "a hundred percent certain that [appellant] was [the assailant]," the evidence was insufficient. Nevertheless, Brown confidently and positively identified appellant in the photo spread and in court. Appellant presents no law, nor can we find any, that requires one hundred percent certainty in the identification of a perpetrator. The standard for guilt is beyond a reasonable doubt, not absolute certainty. See Victor v. Nebraska, 511 U.S. 1, 12 (1994).

Appellant also argues the length of time between the robberies and the identifications from the photo spread makes the identifications unreliable. However, in McCary v. Commonwealth, 228 Va. 219, 234, 321 S.E.2d 637, 645 (1984), the Supreme Court found that, although fifteen months had elapsed from the crime to the identification, "the mere passage of time

-

is insufficient to invalidate the identification."  We do not believe the passage of a week makes these identifications inherently unreliable.

Finally, appellant argues Brown's identification is unreliable because "Brown's belief that God led him to identify the right person is simply an unacceptable basis for making an eyewitness identification."  This argument mischaracterizes Brown's testimony.

When asked on cross-examination what made him "a hundred percent" certain of his identification when he was not so certain at the preliminary hearing, Brown explained:

> [F]ollowing the incident, I prayed and I
> asked the Lord to apprehend the man that had
> done this to me for his own safety as well
> as the safety of someone else, because I
> felt that if this continues, he is going to
> meet someone who is going to either be hurt
> or him [sic] be hurt.  When the officer came
> and told me that they had apprehended a
> gunman, I believed that was an answer to my
> prayer.

When asked again, "You still can't say with a hundred percent certainty that [appellant] was the person that robbed you; isn't that true," Brown answered:

> Because I only saw this, but I believe that
> the God I serve answers prayer.  And I
> didn't ask for it for a selfish reason, but
> I didn't ask him to do it to get my money
> back.  I didn't do it for – but for his own
> safety and the safety of someone else.  And
> that is the way I believe it happened.  And
> that's why I'm confident. . . . I can tell
> you today that I, as an individual cannot

-

say that as a hundred percent because I did not see the person without the mask.

This testimony does not suggest Brown identified appellant "because God had told him this was the robber," as appellant suggests. Brown clearly identified appellant from a photo spread based on his observations prior to and during the robbery, not because of his religious beliefs. Instead, Brown's testimony made clear, while personally he was certain appellant was the man who robbed him, his identification was not "a hundred percent" certain because the assailant was wearing a mask.

All of the Biggers factors support the reliability of the identifications. Based on the totality of the circumstances, we hold the identification testimony was reliable and sufficient to support the trial court's findings.

Further, non-identification evidence in the record supports the finding of guilt. Detective Barger interviewed appellant and asked him if he knew anything about "the guy on a bike" who had committed the robberies. Appellant replied, "With a gun?" Appellant then stated that a friend told him about someone committing robberies while riding a bike. Appellant also told Barger that his friend said "to be careful because the guy on the bike looked exactly like [appellant]." The trial court could view this evidence as indicative of appellant's involvement in the robberies because he knew a gun was used.

-

"In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Additionally, the witnesses' identifications serve as evidence for each robbery. While other crimes evidence generally is not admissible, appellant did not object to its use here. Other crimes evidence is admissible, as an exception to the general prohibition, to prove identity "where the prior criminal acts are so distinctive as to indicate a modus operandi." Sutphin v. Commonwealth, 1 Va. App. 241, 245-46, 337 S.E.2d 897, 899 (1985). The distinction must be unusual, such that the manner in which the crime is committed creates a "signature" of the accused. Henderson v. Commonwealth, 5 Va. App. 125, 128, 360 S.E.2d 876, 878 (1987).

Here, the similarities are numerous and unusual. First, both crimes occurred in the morning, in the driveway of a home in the Wythe area of Hampton. Both male victims were bent over, working on their cars, when the robber approached. The robber used a gun in both crimes. The robber asked for the victims' wallets and money, nothing else. He took nothing else. Finally, and most unusually, the robber rode up to the scene on a bicycle, left it on the ground as he approached the victims, and then rode it away. This evidence is sufficiently

-

distinctive to establish a modus operandi.  See, e.g., Yellardy v. Commonwealth, 38 Va. App. 19, 24-25, 561 S.E.2d 739, 742 (2002) (finding evidence of two robberies relevant to the issue of identity where the robber used "identical methods," including using a rock as a weapon).

Appellant argues his alibi evidence was credible, but the trial court was free to reject that testimony.  "When weighing the evidence, the fact finder is not required to accept entirely either the Commonwealth's or the defendant's account[, but instead] . . . may reject that which it finds implausible, [and] accept other parts which it finds to be believable."  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (citations omitted).  In resolving an identification/alibi conflict, the trial court is the fact finder and, as such, assesses the credibility of the witnesses, which we will not disturb unless plainly wrong or without evidence to support it. See Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987).

Appellant invites us to rule that eyewitnesses' identifications are "notoriously unreliable" and insufficient to support a conviction, citing United States v. Wade, 388 U.S. 218 (1967).  We decline that invitation.  We first note appellant has taken the quotation out of context.  Wade addressed the need for counsel at a post-indictment lineup that used an unduly suggestive procedure.  While initially the Supreme Court

-

suggested eyewitness identification is unreliable, the Court then explained this concern applies in the specific context of suggestive lineups. They said, "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." Id. at 228-29. Further, appellant can point to no court that, as a matter of law, refuses to allow any eyewitness testimony on identification of a perpetrator.

The trial judge accepted the identification testimony of Kilgore and Brown. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Although in some circumstances identification testimony can be unreliable and insufficient to support a conviction, see Smallwood, 14 Va. App. at 530-33, 418 S.E.2d at 568-70, the testimony of the victims here was competent and was not inherently incredible.

## Conclusion

From the identification testimony, appellant's statements, and other evidence, the trial judge could conclude beyond a

-

reasonable doubt that appellant committed the charged offenses. We affirm the convictions.

<u>Affirmed.</u>
