UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Judges Huff, Chafin and Decker
Argued by teleconference


JAMES STEARN, S/K/A
  JAMES GILBERT STEARN

                                                  MEMORANDUM OPINION[*] BY
v.      Record No. 2064-12-2                       JUDGE TERESA M. CHAFIN
                                                      FEBRUARY 11, 2014
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                            Edward L. Hogshire, Judge

          David A. Eustis (Eustis & Graham, PC, on brief), for appellant.

          Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        James Stearn ("Stearn") was convicted in a jury trial of felony third or subsequent offense

peeping into an occupied dwelling in violation of Code §§ 18.2-130 and 18.2-67.5:1.  On appeal,

appellant contends that the evidence was insufficient to support his conviction.  We disagree and

affirm Stearn's conviction.

                                        BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence showed that on the night of

June 20, 2011, Bette Harding ("Harding") saw the forehead, hairline, and head of a white male

with "messy and curly" light-colored hair peering at her from outside through the open bedroom

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

window of her basement apartment in the City of Charlottesville. Harding said the man had the complexion of someone who had been working outside in the sun. She yelled, the man ran away, and she called the police.

At approximately 9:00 p.m. on July 7, 2011, Harding was dressing in her bedroom when she again saw a man looking at her through her bedroom window. When she yelled, the man got up and ran. She observed the shoulders, arms, legs, and back of a man she estimated to be in his "late twenties or early thirties," because he "got up really fast and ran away." The man's shoulders were facing the window, and he wore a light colored t-shirt and blue jeans. Harding's roommate called the police.

Charlottesville City Police Sergeant D.J. Harris was called to the scene at approximately 10:15 p.m. Sergeant Harris had worked as a property detective for several years investigating burglaries. The trial court found Harris was qualified to "give his opinions about the collection process and what that revealed." He had processed hundreds of crime scenes for latent fingerprints. Harris stated that he works with witnesses to locate an area to look for prints that would likely be of value to his investigation. He explained the process of using a brush, black powder, and tape to lift the prints.

Harris testified that certain surfaces were better than others for lifting prints: metal and glass being the best, and porous surfaces being the worst. He also explained that certain locations were better than others for lifting prints: inside versus outside with possible exposure to the elements. Harris explained how he was able to determine, based upon his experience, when fingerprints appeared "fresh" or new. Harris looked for a quality latent print that would allow the print to be processed through a computer fingerprint identification system database to be matched with the fingerprints of known individuals.

Sergeant Harris met with Harding and, without touching anything, had her direct him to the exact location where she had observed the man peeping into her bedroom window and show him how the man had been positioned. Harding indicated the man was kneeling in a four-foot gap between two large, square air conditioning units located directly across from her bedroom window in the eight-foot-wide enclosed space separating her apartment building from the adjacent building.

Harris processed the scene for fingerprints. Based upon what Harding had told him, he focused on two air conditioning units identified as units 2 and 3 in a photograph of the scene.[1] He started with the "leading edge" of unit 2 facing unit 3 because "the majority of people are right-handed" and the perpetrator's right hand likely would have been resting on that unit for "leaning support" to squat or stand. He applied the black powder and "got crisp, clean, clear ridges right off the bat." Harris concluded from his experience and training that the prints were "fresh, [and] recently placed on this . . . unit."

Expert Forensic Fingerprint Examiner Sarah Dwyer determined that three fingerprints lifted by Harris and processed by her were made by James Stearn's right hand. Dwyer also identified prints made by Stearn's left hand, and testified that the fingerprints Harris lifted from the air-conditioner had "nice, dark, thick ridges," and were "nice fingerprints."

In a police photo array on July 25, 2011, and again at trial, Harding identified Stearn as having the same hair, hairline, and forehead as the man she saw at her window the night of June 20, 2011.

Based on Harding's identification and the fingerprint evidence, Stearn was arrested on July 26, 2011 and was charged with felony third or subsequent offense peeping into an occupied dwelling.

---

[1] The photograph was introduced as evidence at trial.

Stearn testified at trial that, around the time of the incident on July 7, 2011, he was walking home alone down Preston Avenue talking on his cell phone for approximately 30 minutes with a longtime girlfriend and then watching television alone. He did not provide any cell phone records to police, and at trial he did not have his girlfriend present to testify or have cell phone records to corroborate his whereabouts. He did not tell police the places he went on July 7, 2011 that he testified about at trial. He said his fingerprints were on the air conditioning units across from Harding's bedroom window because he walked into the small area between the buildings to urinate sometime between June 25 and June 30, 2011, on his way home from the Subway restaurant located on 14th Street where he worked making and delivering sandwiches.

ANALYSIS

Appellant contends that the evidence was insufficient to sustain his conviction of window peeping because the Commonwealth failed to identify him as the man Harding saw peering in her bedroom window on the night of July 7, 2011. We disagree.

When reviewing the sufficiency of evidence, this Court "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (emphasis in original) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant. Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997). Finally, the inferences to be drawn from proved

- 4 -

facts are within the province of the fact finder so long as the inferences are reasonable and justified. Woodward v. Commonwealth, 218 Va. 1045, 243 S.E.2d 231 (1978); Webb v. Commonwealth, 204 Va. 24, 129 S.E.2d 22 (1963); Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

Code § 18.2-130(A) states:

> It shall be unlawful for any person to enter upon the property of another and secretly or furtively peep, spy or attempt to peep or spy into or through a window . . . of any building, structure, or other enclosure of any nature occupied or intended for occupancy as a dwelling . . . .

"'At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt.'" Cuffee v. Commonwealth, 61 Va. App. 353, 364, 735 S.E.2d 693, 698 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423, 579 S.E.2d 658, 663 (2003)). "The factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), are used to determine 'whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator." Id. (quoting Brown v. Commonwealth, 37 Va. App. 507, 522, 559 S.E.2d 415, 423 (2002)). See also Smallwood v. Commonwealth, 14 Va. App. 527, 530, 418 S.E.2d 567, 568 (1992).

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199-200. "In evaluating the reliability of the identification, this Court looks to the totality of the circumstances." Cuffee, 61 Va. App. at 364, 735 S.E.2d at 699. See Miller v. Commonwealth, 7 Va. App. 367, 373, 373 S.E.2d 721, 724 (1988).

We hold that the evidence was sufficient for a fact finder to convict appellant of third or subsequent offense peeping into an occupied dwelling. Considering the totality of the circumstances, the evidence was sufficient to allow a rational fact finder to conclude beyond a reasonable doubt that Stearn was the man Harding saw peeping in her bedroom window on June 20, 2011, and he returned to the same location to peep again on July 7, 2011. Harding observed Stearn at her bedroom window, described Stearn to police shortly after the peeping incidents, and identified Stearn in a photo array less than three weeks after the last peeping incident. In addition, Stearn's "fresh" fingerprints were found on the air conditioning units outside of Harding's window, where Harding told Harris the perpetrator was kneeling when she saw him.

Moreover, the identification of appellant by his distinctive forehead, hairline, and hair and his "fresh" fingerprints were not the only evidence before the jury. Appellant testified that he was walking home and then at home alone watching television at the time of the offense on the night of July 7, 2011. He also testified he was talking on his cell phone to his longtime girlfriend, but he offered no cell phone records or witness testimony to corroborate his alibi. He claimed he left the fingerprints when urinating a week prior to the incident. The jury was entitled to evaluate the reasonableness of the defendant's story. Further, the jury was free to disbelieve these self-serving statements, and to infer that appellant was actually lying to conceal his guilt. See Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982) (holding that the fact finder "'need not believe the accused's explanation and may infer that he is trying to conceal his guilt'" (quoting Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981))).

For the above reasons, we hold that the trial court did not err in finding the evidence of appellant's identity as the perpetrator sufficient to support appellant's conviction.

<u>Affirmed.</u>