COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Beales and Raphael
Argued at Norfolk, Virginia


FREDERICK CLARK, JR.

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1794-22-1           JUDGE STUART A. RAPHAEL
                                               JANUARY 23, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

(Cole M. Roberts; Law Office of Eric Korslund, P.L.L.C., on brief),
for appellant.  Appellant submitting on brief.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Frederick Clark, Jr., appeals his convictions for robbery, abduction, object sexual

penetration, and three counts of using a firearm in the commission of a felony.  His sole

challenge is to the sufficiency of the victim's testimony that Clark was the perpetrator.  We

affirm the convictions, concluding that the identification evidence sufficed to prove Clark's guilt

beyond a reasonable doubt.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

UNPUBLISHED

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

At about 4:30 a.m. on July 29, 2017, S.L. was working the overnight shift at a 7-Eleven convenience store in Norfolk when a man entered the store. S.L. was stocking the shelves at the time, wearing earbuds and talking on the phone with her friend, a co-worker at another 7-Eleven. S.L. remarked to her co-worker how strangely the man was dressed because it was so hot outside. The man wore all black clothing, a beanie hat, and sunglasses.

After the man passed by S.L. several times, "really close," she asked him why. When he did not respond, she asked if he needed help finding something. Again, he did not reply. S.L., still on the phone, followed her co-worker's advice to get behind the counter to be near the alarm.

Walking up to the counter, the man asked for a pack of cigarettes. S.L. turned around to get them. When she turned back around, the man lifted his shirt to show her a pistol tucked into his waistband. Hoping her co-worker would realize a robbery was underway, S.L. said to the robber, "Okay. Okay. Hold on. Let me get the money out." S.L. removed the drawer from the cash register. Her co-worker heard what was happening and called 911. The robber demanded the contents of the second cash register too. S.L. told him that it had no money, but he made her show him the empty drawer.

The robber ordered S.L. to walk to the back of the store. He told her to open the door to an office, but it was locked. Holding the gun in his right hand, he told S.L. to undo her pants. When she asked—"Why?"—the man yanked her belt. Fearing for her life, S.L. said, "Hold on, I'll do it," and she unfastened her pants. Holding the gun in his right hand, the man reached into her underwear with his left hand and stuck his fingers into her vagina. After penetrating her for

- 2 -

15 to 20 seconds, his face inches from hers, the man stopped and walked out of the store. S.L. ran to the front door, locked it, and called 911.

Detective Jennifer Baron and her partner responded to the 911 call. S.L. showed them the store's surveillance video, which had captured the crimes. Detective Baron arranged for a forensic nurse to examine S.L. later that morning, and S.L. gave a recorded interview a few days later. Although Detective Baron extracted still photographs of the man from the video, there were no other "leads" to go on.

About two months later, however, S.L. saw the man's photograph on the television news. She immediately recognized him as her assailant and called the police. She testified, "as soon as I s[aw] him, I just started having anxiety, like freaking out, oh my gosh, that is him, that is him."

In July 2018, the grand jury returned indictments against Clark for robbery (Code § 18.2-58), use of a firearm in the commission of a felony (Code § 18.2-53.1), abduction with intent to defile (Code § 18.2-48), object sexual penetration (Code § 18.2-67.2), and possession of a firearm by a previously convicted violent felon (Code § 18.2-308.2(A)). It was not until December 2019, however, that Clark was arrested.

After several continuances due to COVID-19, Clark's two-day jury trial took place in August 2022, more than five years after the crimes. S.L. testified at trial and described Clark's facial features, attire, and his proximity to her throughout the incident. S.L. then identified Clark (who was sitting in the courtroom) as the person who sexually assaulted her. S.L. identified Clark in three photographs, derived from the video, showing him in the 7-Eleven that night. She also identified Clark as the person she saw in the photograph shown on the television news two months after the crimes. The Commonwealth played the 7-Eleven surveillance video for the jury. S.L. affirmed that she was "a hundred percent" sure that the person in the video was Clark.

On cross-examination, defense counsel questioned Detective Baron on the use of lineups generally and the reasons for not using one in this case. Detective Baron testified that the police did not show S.L. a photo lineup because S.L. had "independently identified Mr. Clark as the one who robbed the store and sexually assaulted her," so it was "not necessary." Baron described that practice as the police department's "procedure in these type of cases."

The trial court denied Clark's motion to strike, finding the evidence sufficient to show that Clark was the perpetrator. Over the Commonwealth's objection, the trial court instructed the jury: "The Commonwealth bears the burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the crime charged. If the Commonwealth has not met this burden, you must find the defendant not guilty."

So instructed, the jury found Clark guilty of all charges. The trial court sentenced Clark to 103 years' incarceration with 65 years suspended. Clark noted a timely appeal, challenging only the sufficiency of his identification as the perpetrator.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting

*Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "[D]etermining the credibility of the witnesses and the weight afforded th[eir] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

In cases challenging the sufficiency of the defendant's in-court identification, Virginia appellate courts apply the analysis set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). *See, e.g.*, *Satcher v. Commonwealth*, 244 Va. 220, 248-49 (1992); *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013); *Brown v. Commonwealth*, 37 Va. App. 507, 522 (2002). *Biggers* involved a due-process challenge to a pretrial identification "involving improperly suggestive, out of court police procedures." *Walker v. Commonwealth*, ___ Va. ___, ___ (June 1, 2023), *petition for cert. docketed* (U.S. Aug. 31, 2023) (No. 23-5505). *Biggers* directed courts in such cases to examine

> whether under the "totality of the circumstances" the identification
> was reliable even though the confrontation procedure was
> suggestive. . . .  [T]he factors to be considered in evaluating the
> likelihood of misidentification include [1] the opportunity of the
> witness to view the criminal at the time of the crime, [2] the
> witness' degree of attention, [3] the accuracy of the witness' prior
> description of the criminal, [4] the level of certainty demonstrated
> by the witness at the confrontation, and [5] the length of time
> between the crime and the confrontation.

409 U.S. at 199-200.

As the Commonwealth noted at oral argument, this case involves a sufficiency challenge to an *in-court* identification, not a due-process challenge to an unduly suggestive *out-of-court* identification. Still, our appellate courts have consistently applied the *Biggers* factors to determine whether the totality of circumstances supported the sufficiency of the in-court identification. *E.g.*, *Cuffee*, 61 Va. App. at 364 ("The factors set forth in [*Biggers*] are used to determine 'whether the identification evidence is sufficient, standing alone or in combination

with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator."

(quoting *Brown*, 37 Va. App. at 522)); *Smallwood v. Commonwealth*, 14 Va. App. 527, 530

(1992) ("In determining whether eyewitness identification is reliable, our Supreme Court has

adopted the factors set out in [*Biggers*] . . . ."). We need not depart from that approach here.

The first two *Biggers* factors—opportunity to view and degree of attention—support the

reliability of S.L.'s in-court identification. S.L. viewed Clark before and during the crime. She

testified about her attention to his mouth and lips, facial expressions, and attire. She noticed him

when he first entered the 7-Eleven because his all-black clothing, beanie hat, and sunglasses (at

4:30 a.m.) were inappropriate for the hot weather, something she mentioned to her co-worker on

the phone. *Cf. McCary v. Commonwealth*, 228 Va. 219, 233 (1984) ("The degree of the victims'

attention is shown by their curiosity concerning [the defendant]'s actions before the crimes.").

S.L. then observed Clark as he walked around the store and came "right beside her." From

behind the counter, she directly faced Clark when he flashed his pistol at her. Then, after Clark

forced her to the backroom, S.L. came "face-to-face" with him again several times, looking him

"[r]ight in his face," just inches away, as he digitally penetrated her for 15 to 20 seconds. "She

was no casual observer, but rather the victim of one of the most personally humiliating of all

crimes." *Biggers*, 409 U.S. at 200. And although his sunglasses prevented S.L. from seeing his

eyes, her view of his mouth and large lips were seared into her memory. *Cf. Cuffee*, 61 Va. App.

at 365 (victim "paid close enough attention to appellant's appearance that he could identify the

'structure' of appellant's face"). S.L. had such a good view that she observed the "stupid smart

look on his face" when he removed his fingers from her vagina.

The third *Biggers* factor—the accuracy of the witness's prior description of the

criminal—also supports the sufficiency of S.L.'s identification. When S.L. first saw Clark's

picture on the television news two months after the crimes, she immediately recognized him as

the assailant and reported it to the police.  She testified that Clark's mouth was the first thing that stood out to her.

The fourth *Biggers* factor—the witness's level of certainty—also supports her identification.  S.L. suffered immediate anxiety upon seeing Clark's face on the news, certain "that is him, that is him."  She testified at trial that she was "a hundred percent" sure that Clark was the perpetrator.  When asked how she could be so certain, she said, "Because I never forget the mouth."  Her in-court identification was thus "unequivocally positive."  *Satcher*, 244 Va. at 250.  She did not manifest "the slightest doubt," *McCary*, 228 Va. at 234, that Clark committed the crimes.

To be sure, the fifth *Biggers* factor—"the length of time between the crime and the confrontation," *Biggers*, 409 U.S. at 199-200—presents a closer call.  More than five years elapsed from when the crimes were committed until Clark's trial.  That is a longer span than in other cases where the witness's in-court identification was found to be sufficient.  *See, e.g.*, *Satcher*, 244 Va. at 250 (15 months); *Brown*, 37 Va. App. at 523 (7 months); *Charity v. Commonwealth*, 24 Va. App. 258, 263 (1997) (12 months).

"But the lapse of time alone is not sufficient to render an identification unreliable as a matter of law."  *Satcher*, 244 Va. at 250; *see also McCary*, 228 Va. at 234 ("Although 15 months elapsed between the crimes and the identification testimony[,] . . . the mere passage of time is insufficient to invalidate the identification.").  Moreover, the five-year span here was interrupted at the outset by the victim's unequivocal identification of Clark in the television-news photograph just two months after the crimes.  That early and unequivocal out-of-court identification mitigates the concern that would otherwise arise from a five-year delay in the victim's identifying the perpetrator for the first time at trial.

We also find it significant that the jury here had more to go on than just S.L.'s in-court identification of Clark. The jury could view the still photographs of the perpetrator entering the 7-Eleven that night and the video of him walking around the store, interacting with S.L., and sexually assaulting her in the backroom. "Here, the video and photographs made from it were admitted as silent witnesses," *Bennett v. Commonwealth*, 69 Va. App. 475, 488 (2018), corroborating S.L.'s in-court identification. The jury "had the opportunity to observe" Clark and "was entitled to compare" S.L.'s description and the television-news photograph she saw to Clark's "physical appearance and weigh" S.L.'s "credibility accordingly." *Traish v. Commonwealth*, 36 Va. App. 114, 133 (2001).

## CONCLUSION

"Considering the totality of the circumstances in this case, we have no difficulty in saying that" the victim's "in-court identification of" Clark "was reliable." *Satcher*, 244 Va. at 250. "While other evidence supports all the convictions in this case, [the victim]'s in-court identification . . . was sufficient alone to establish [Clark] as her assailant." *Id.* at 256.

*Affirmed.*