COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Agee
Argued at Richmond, Virginia


THOMAS WILLIAM BROWN
                                        OPINION BY
v.   Record No. 0024-01-2        JUDGE G. STEVEN AGEE
                                      FEBRUARY 12, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     James B. Wilkinson, Judge

            Craig W. Stallard, Assistant Public Defender
            (Patricia P. Nagel, Assistant Public
            Defender; Office of the Public Defender, on
            brief), for appellant.

            Stephen R. McCullough, Assistant Attorney
            General (Randolph A. Beales, Attorney
            General, on brief), for appellee.


     Thomas William Brown (Brown) was indicted in the City of

Richmond for robbery and the attempted carjacking of Josherryl

Amos, and for robbery of Patricia Wolliver.  The Commonwealth

pursued all three indictments in one trial.  A jury convicted

Brown of carjacking, in violation of Code § 18.2-58.1, and two

counts of robbery, in violation of Code § 18.2-58.  The trial

court, on Brown's motion, reduced the carjacking conviction to

attempted carjacking prior to sentencing in view of the actual

charge in the indictment.  He was sentenced to a term of ten

years incarceration, with eight years suspended, on the

attempted carjacking conviction, and terms of imprisonment of

five years for each robbery conviction.  On appeal, Brown contends (1) the trial court erred in refusing his request to sever the charges and permit a separate trial on the Wolliver robbery; (2) the Double Jeopardy Clause precludes his conviction of both robbery and carjacking; (3) a "fatal variance" between the indictment and the jury's pronouncement of guilty of carjacking requires dismissal; and (4) the evidence is insufficient for the attempted carjacking conviction and one of the robbery convictions.  For the following reasons, we disagree with all of Brown's contentions and affirm his convictions.

## I.  BACKGROUND

On October 3, 1999, Josherryl Amos (Amos), accompanied a friend's niece, Lynn Bishop (Bishop) to purchase infant formula. Bishop drove her car, a 1993 silver Mitsubishi two-door coupe, to the parking lot of a drug store on Hull Street in the City of Richmond around 6:00 p.m.  While Bishop ran inside, Amos stayed in the car with the doors unlocked and the engine running.

Brown suddenly entered the car and ordered Amos to leave. Amos refused.  He pulled out a knife, placed it on Amos' throat and told her to get the "f" out of the car or he would kill her. Amos tried to take her pocketbook with her, which prompted Brown to rhetorically ask if she "was stupid or something."  Amos then got out of the car, leaving her pocketbook behind.

Shortly thereafter, around 7:00 p.m., Patricia Wolliver (Wolliver) was seated in her automobile in the parking lot of a

grocery store on Jahnke Road in the City of Richmond. She was about to exit the parking lot onto the road when Brown, who was driving a small, silver colored car, left his vehicle and approached Wolliver's car. He initially asked her for directions to Midlothian Turnpike. She explained how to get there. He then asked her how to find Chippenham Hospital. She gave him more directions. Brown then told her, "I've got a gun and I will shoot and kill you if you don't give me your pocketbook." Wolliver was shocked at this unexpected threat. Brown reached in, struck her across the chest, grabbed her purse and sped away in the silver car. The experience was devastating for Wolliver.

At approximately 10:00 p.m. that evening, Bishop and Amos chanced upon Bishop's car, which Brown had abandoned, leaving the engine running and the lights on. Amos found certain items belonging to Wolliver in Bishop's recovered car and contacted Wolliver to return the items. These items had been in Wolliver's purse.

At trial, Amos and Wolliver identified Brown as the man who robbed them. Brown, however, denied committing the offenses and adduced alibi testimony from his former girlfriend and her mother, who claimed Brown spent the entire day in question with them.

## II.  ANALYSIS

### A.  MOTION TO SEVER

Brown argues that the trial court erred in denying his motion to sever the Amos and Wolliver charges for trial.  Rule 3A:10(b) allows the trial court to try the accused for more than one offense at a time "if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto."  Because appellant did not consent to joint trial of the offenses, we must examine whether Rule 3A:6(b) allowed joinder and, if so, whether justice nonetheless required separate trials.

### 1.  RULE 3A:6(b)

Under Rule 3A:6(b), "[o]ffenses may be joined if (1) the offenses are based on 'the same act or transaction,' (2) the offenses are based on 'two or more acts or transactions that are connected,' or (3) the offenses 'constitute parts of a common scheme or plan.'"  Cook v. Commonwealth, 7 Va. App. 225, 228, 372 S.E.2d 780, 782 (1988).  If the offenses are merely "multiple offenses of a similar nature committed by the same people" they do not meet the requirements of Rule 3A:6(b).  Spence v. Commonwealth, 12 Va. App. 1040, 1043, 407 S.E.2d 916, 917 (1991).  The determination as to joinder rests within the sound discretion of the trial court and will not be reversed

- 4 -

absent a showing of abuse of that discretion.  Ferrell v. Commonwealth, 11 Va. App. 380, 386, 399 S.E.2d 614, 617 (1990).

We find Brown's offenses were not part of the "[s]ame act or transaction" under the first prong of Rule 3A:6(b).  Each offense was a separate act taking place at a different location and at a different time.  However, the Commonwealth argues that the offenses were properly tried together because they were interconnected, thus satisfying the second prong of Rule 3A:6(b).  We agree that the offenses were based on "two or more acts or transactions" that were "connected."

To meet the "connected" test, the crimes should be "so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety."  Kirkpatrick v. Commonwealth, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970) (quoting Walker v. Commonwealth, 28 Va. (1 Leigh) 628, 631 (1829)); see also Spence, 12 Va. App. at 1044, 407 S.E.2d at 918.  Here, the evidence of Brown's crimes was closely intertwined.  Wolliver observed Brown driving a small, silver car at the time he robbed her.  Items stolen from Wolliver were discovered in Bishop's car.  Wolliver's testimony was indispensable to corroborate Amos' account that Brown robbed and carjacked her because he was the one Wolliver saw driving Bishop's car.  Conversely, Amos' testimony that Brown had very recently carjacked a small, silver car, which was later found with Wolliver's stolen items inside it, constituted critical

corroboration of Wolliver's testimony because it placed Brown in the car he used during the robbery of Wolliver. Furthermore, the evidence, heard together, rebutted Brown's contention that he did not commit the crimes because he was with his girlfriend the entire day.

Wolliver's testimony was critical in Amos' case and Amos' testimony was critical in Wolliver's case so that they could "not be departed from with propriety." The requirements of Rule 3A:6(b) were met in this case.

## 2. JUSTICE DID NOT REQUIRE SEPARATE TRIALS

Finding the offenses "connected" under Rule 3A:6(b), we must then determine if justice required Brown to have separate trials. Brown's motion for severance suggested that justice required separate trials by asserting that evidence of one offense would prejudice the jury as to the other offense. This result could occur in any case where one offense is tried with another.

"Justice often requires separate trials where highly prejudicial evidence of one of the crimes is not admissible in the trial of the other." Long v. Commonwealth, 20 Va. App. 223, 226, 456 S.E.2d 138, 139 (1995). "Generally, evidence of other offenses is inadmissible if it is offered merely to show that an accused was likely to commit the crime for which he is being tried." Cheng v. Commonwealth, 240 Va. 26, 33, 393 S.E.2d 599, 603 (1990). Exceptions to this rule allow evidence of other

offenses where the evidence "tends to prove any relevant element of the offense charged . . . [or] where the motive, intent or knowledge of the accused is involved." Id. at 34, 393 S.E.2d at 603 (citation omitted).

In the case at bar, evidence pertaining to the commission of each crime tended to prove the identity of the offender in the commission of the other crime.

> Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.

Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805 (citations omitted).

"[J]ustice did not require separate trials for the offenses because, if the offenses were . . . tried separately, evidence of the other offenses would have been admissible to prove the perpetrator's identity." Traish v. Commonwealth, 36 Va. App. 114, 130, 549 S.E.2d 5, 13 (2001). Given Brown's claim that he was not the person who committed the offenses, the probative value of the evidence of the other offenses is obvious, and we cannot say that the trial court abused its discretion in finding that the probative value outweighed the prejudicial effect of such evidence.

Because the offenses met the requirement of Rule 3A:6(b) and justice did not require separate trials, the requirements of Rule 3A:10(c) were met. We hold, therefore, that the trial court did not abuse its discretion in denying Brown's motion for separate trials.

### B. CLAIM OF DOUBLE JEOPARDY VIOLATION

Brown also avers that the trial court erred in convicting him of the separate charges of carjacking and robbery of Amos. He argues the robbery of the purse "merges" with the carjacking and that he should only have been tried on the carjacking charge. Citing no authority for his "merging" of the offenses argument,[1] Brown simply argues "the robbery of the purse merges into the attempted carjacking of the vehicle, and thus, the conduct constitutes a single offense . . . . The Double Jeopardy and Due Process Clauses prohibit multiple punishments for the same offense." We disagree with his contention that the Double Jeopardy Clause prohibits the Commonwealth, under the

---

[1] While it is not clear if Brown is arguing for application of the merger doctrine, or not, we note that merger, a common-law principle, recognizes that certain offenses arising from the same occurrence may merge into a single offense. Lash v. County of Henrico, 14 Va. App. 926, 929, 421 S.E.2d 851, 853 (1992). However, the "doctrine of merger [is] not widely accepted . . . [t]he doctrine has never been applied in Virginia." Cotton v. Commonwealth, 35 Va. App. 511, 516, 546 S.E.2d 241, 244 (2001).

Brown does not argue that Code § 19.2-294 is applicable to his case requiring "merger" of the charges. With the common law doctrine not accepted in Virginia and no request to consider the application of Code § 19.2-294, we do not address the concept of merger.

facts of this case, from convicting Brown of both robbery of the purse and carjacking.

The Double Jeopardy Clause protects defendants from multiple punishments for the "same offense."  See Shears v. Commonwealth, 23 Va. App. 394, 400, 477 S.E.2d 309, 312 (1996). However, it does not apply where the same conduct is used to support convictions for separate and distinct crimes.  See Thomas v. Commonwealth, 244 Va. 1, 9, 419 S.E.2d 606, 610 (1992).  The robbery of Amos of her purse was a separate and distinct act, apart from the seizure of the automobile.  See Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985). Brown seized the automobile by threatening Amos with a knife and ordering her out of the vehicle.  Brown, thus, committed the offense of carjacking.  See Code § 18.2-58.1(B).  As Amos began to exit the automobile, she attempted to take her purse with her, drawing Brown's attention to the purse.  With the knife still threateningly present, Brown ordered Amos to surrender her personal property.  This was a separate and distinct act, accompanied by a separate threat of violence, from the prior act of carjacking.  Brown, thus, committed a separate offense of robbery[2] subsequent to the act of carjacking.  The robbery and

---

[2] Robbery is a common law offense in Virginia and is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation."  Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968).  "The predicate element of robbery is the actual taking by caption and

carjacking were separate crimes committed by separate acts. Brown was properly charged with and convicted of both offenses. See Blythe v. Commonwealth, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981) (citation omitted).

We further conclude the General Assembly made it clear that conviction for the offense of carjacking does not prohibit the Commonwealth from pursuing any other crime an offender commits while the carjacking is in progress. Code § 18.2-58.1(C) provides: "The provisions of this section shall not preclude the applicability of any other provision of the criminal law of the Commonwealth which may apply to any course of conduct which violates this section." The language of the statute is plain and requires no interpretation. Therefore, the Commonwealth is clearly permitted to try and convict an offender of both robbery and carjacking when the evidence supports convictions for those crimes.

C. THE VARIANCE BETWEEN THE INDICTMENT AND CONVICTION

Next, Brown contends there was a fatal variance between the indictment and the carjacking charge of which he was convicted that requires the reversal of his conviction. We find this issue barred.

---

asportation of the personal property of the victim. . . . Severance of the goods from the owner and absolute control of the property by the taker . . . constitutes an asportation." Beard v. Commonwealth, 19 Va. App. 359, 362, 451 S.E.2d 698, 700 (1994) (citations omitted).

After his trial, Brown moved "the Court to amend the conviction to an attempt." He argued by oral and written motions that "he can be convicted of nothing more than an attempted carjacking because of the wording of the indictment." The Commonwealth and the trial court agreed. Brown's conviction for carjacking was reduced to a conviction for attempted carjacking.

Now, on appeal, Brown argues for the first time that the Commonwealth was required to seek a new trial. "The defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979). "'No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate - to invite error . . . and then to take advantage of the situation created by his own wrong.'" Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)). This is exactly what Brown attempts to do, and he cannot.

### D.  SUFFICIENCY OF THE EVIDENCE

As a final contention on appeal, Brown argues the evidence was insufficient to convict him of attempted carjacking and the robbery of Wolliver.

> "Where the sufficiency of the evidence is
> challenged after conviction, it is our duty
> to consider it in the light most favorable

to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

Furthermore, "[t]he credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted).

Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000). For the following reasons we disagree with Brown's contentions.

## 1. ATTEMPTED CARJACKING

Code § 18.2-58.1(B) provides, in pertinent part:

"[C]arjacking" means the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the

- 12 -

> threat or presenting of firearms, or other
> deadly weapon or instrumentality whatsoever.

Thus, as to the attempted carjacking charge, the Commonwealth was required to prove that Brown intentionally acted to deprive someone in possession or control of Bishop's vehicle of his or her possession or control by means specified in Code § 18.2-58.1(B). Brown contends the Commonwealth failed to prove this element of the crime because Amos was not in control of the car keys. We disagree with Brown's argument.

The evidence demonstrates that Amos, the passenger awaiting Bishop's return, was "in possession or control" of the vehicle at the time Brown got into the vehicle and ordered her with a knife to exit the vehicle. Possession of a vehicle may be actual or constructive. See Bell v. Commonwealth, 21 Va. App. 693, 467 S.E.2d 289 (1996). Actual possession is the "physical occupancy or control over property." See Black's Law Dictionary 1183 (7th ed. 1999). Clearly, Amos physically occupied the vehicle at the time Brown seized it. She was in possession of the vehicle. She also had control[3] of the running vehicle at the time it was seized. Constructive possession of the vehicle provided Amos with the control of it. "Constructive possession" occurs where an individual has the means of exercising dominion

---

[3] The word "control" has been held to have "no legal or technical meaning apart from its popular sense, and is synonymous with 'manage.'" National Safe Deposit Co. v. Stead, 232 U.S. 58, 62 (1914).

or control over the vehicle.  See Bell, 21 Va. App. at 698-99, 467 S.E.2d at 292.

> The law is well established that possession of the means to exercise dominion or control over an item gives the possessor dominion or control over the item itself.  Thus, when the General Assembly enacted the carjacking statute to protect [a] person[] in "possession or control" of [a vehicle], we presume the legislature intended to include persons possessing the means of exercising dominion and control of the vehicle.

Id. at 699, 467 S.E.2d at 292.

Brown's argument that possession and control are determined solely by the physical possession of the car keys finds no support in the statute or case law.  Subject to Bishop's return, Amos had possession and control of the vehicle.  Amos sat alone in a vehicle that was running; thus, she had the power to exercise control.  In enacting Code § 18.2-58.1, the General Assembly clearly intended to protect persons in Amos' position.

### 2.  THE ROBBERY OF WOLLIVER

Brown also challenges the sufficiency of the evidence to convict him of robbing Wolliver.  He contends the evidence fails to establish that he was the robber because Wolliver's description of her assailant does not match Brown and because Wolliver's identification of Brown "was tainted by the unduly suggestive manner in which it was made."

To support his contentions that Wolliver failed to describe him accurately and was only able to identify him at trial due to

- 14 -

undue influence, Brown points to the following facts: First, he has long hair, is 5'5" tall, does not wear a pierced earring in his ear and is twenty years old. Second, Wolliver provided the police with a physical description of her assailant as a light-skinned black male with curly black hair, approximately 5'11" tall, in his early to mid-thirties, wearing a white baseball shirt with blue and black stripes and a pierced earring in his ear, who fled in a gray or silver car. Third, Wolliver twice viewed a photo spread presented to her by Detective Rinaldi and was unable to identify Brown as her assailant. Fourth, at his preliminary hearing, Wolliver testified that she was unable to identify Brown as her assailant. Fifth, it was only at trial that Wolliver was able to identify him as her assailant.

The Commonwealth points out that Wolliver fully explained her past inability or reluctance to identify Brown. Wolliver testified that she did not want to choose a photograph until she was "100% sure." She testified that she recognized Brown at the preliminary hearing but did not identify him out of fear. She testified, "I was scared. I was nervous . . . I was just so scared I didn't know what to say or do . . . I did [recognize Brown] but I didn't say nothing. I was so scared to even say it was him." After the preliminary hearing she called Detective Rinaldi and identified Brown as her assailant. The detective testified that Wolliver was "nervous" and "real concerned about

her welfare after the fact . . . . She was very nervous, very frightened, real concerned about her family."

The factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), are relevant in determining whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt that Brown robbed Wolliver. See Smallwood v. Commonwealth, 14 Va. App. 527, 530, 418 S.E.2d 567, 568 (1992). To determine the reliability of a victim's eyewitness identification and to evaluate the likelihood of misidentification due to any suggestive factor, the fact finder shall consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Townes v. Commonwealth, 234 Va. 307, 331, 362 S.E.2d 650, 663 (1987), cert. denied, 485 U.S. 971 (1988). "[W]hether an identification is reliable 'depends on the totality of the circumstances.'" Satcher v. Commonwealth, 244 Va. 220, 249, 421 S.E.2d 821, 839 (1992) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)).

Here, Wolliver had a good opportunity to view Brown as he asked her for several sets of directions. Wolliver's identification of Brown at trial, which occurred seven months

after the robbery, was without hesitation.  She stated, "I know.
I can tell you by the complexion of his face, his hair, just - I
mean, that is something you never forget."  Her identification
at trial was certain.  See Satcher, 244 Va. at 250, 421 S.E.2d
at 839 ("of the most significance on the subject of [the
witness'] level of certainty . . . is the fact that her in-court
identification of [the accused] was unequivocally positive").
"The credibility of the witnesses and the weight accorded the
evidence are matters solely for the fact finder who has the
opportunity to see and hear that evidence as it is presented."
Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730,
732 (1995).

Further, the identification of Brown as Wolliver's
assailant is corroborated by Amos' description and in-court
identification of Brown, Amos' testimony placing Brown in
Bishop's silver-gray automobile, and by the discovery of
Wolliver's belongings in Bishop's vehicle.  Under the totality
of the circumstances, in light of all the evidence identifying
Brown as Wolliver's assailant, we cannot say the fact finder was
plainly wrong in finding the evidence sufficient to establish
Brown guilty of robbery.

For the foregoing reasons, we affirm Brown's convictions.

Affirmed.